UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CRA INTERNATIONAL, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 25-cv-13200-ADB |
| DUPONT REGISTRY GROUP, | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff CRA International, Inc. d/b/a Charles River Associates ("CRA") brings this action against Defendant duPont Registry Group ("DRG") based on the alleged breach of an agreement under which CRA provided expert consulting services in connection with two lawsuits. [ECF No. 1-1 at 7–12 ("Complaint" or "Compl.")]. CRA asserts a claim for breach of contract (Count I) and a claim under Mass. Gen. Laws ch. 93A, §§ 2, 11 ("Chapter 93A") (Count II). [Id.]. Before the Court is DRG's motion to dismiss the entire Complaint for lack of personal jurisdiction and to dismiss Count II for failure to state a claim. [ECF No. 9]. For the reasons set forth below, DRG's motion is **GRANTED IN PART** and **DENIED IN PART**.

1

I.      **BACKGROUND**

   A.  **Factual Background**

The Court draws the following facts from the Complaint and materials incorporated by reference therein.  See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  For purposes of resolving DRG's motion to dismiss for failure to state a claim, it "constru[es] the well-pleaded facts in the light most favorable to [CRA], . . . accepting their truth and drawing all reasonable inferences in [CRA's] favor."  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citing Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)).  For purposes of DRG's motion to dismiss for lack of personal jurisdiction, the Court additionally considers "supplemental filings (such as affidavits) . . . contained in the record, giving credence to [CRA's] version of genuinely contested facts" and "tak[ing] into account undisputed facts put forth by the defendant."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (first citing Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); and then citing C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)).

In October 2024, DRG, a Florida limited liability company based in Miami with no business operations in Massachusetts, authorized its legal counsel, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), to hire CRA, a Boston-based consulting firm, to provide expert consulting services related to two lawsuits.  [Compl. ¶¶ 1–2, 4–5]; [ECF 1-1 at 14]; [ECF No. 10 ¶¶ 3–9].  CRA sent Skadden a written retention letter ("Agreement"), dated October 4, 2024, that referred to Skadden as "Counsel" or "you" and to DRG as "Client" or "your Client." [Compl. ¶ 6]; [ECF No. 1-1 at 14–24].  In it, CRA agreed to provide services "on a time and materials basis"; submit invoices to DRG, who was the "ultimate client and . . . responsible for payment"; and provide Skadden with "an informational copy" of the invoices.  [Compl. ¶ 7];

2

[ECF No. 1-1 at 14].  The Agreement stipulated that invoices were due and payable upon receipt and that CRA could charge 1.5 percent interest per month on unpaid invoices.  [Compl. ¶ 20]; [ECF No. 1-1 at 19–20].

Under the terms and conditions attached to the Agreement, "[t]he parties" to the Agreement "submit[ted] to the personal jurisdiction of the courts of the Commonwealth of Massachusetts" and "agree[d] that any dispute that may arise in connection with th[e] [A]greement shall be resolved by the courts of the Commonwealth of Massachusetts, and governed under the laws of the Commonwealth of Massachusetts without regard to conflicts of laws."  [ECF No. 1-1 at 21]; see also [id. at 14 (incorporating terms and conditions into Agreement)].

CRA's retention letter was signed by CRA and, in it, CRA asked Skadden to "sign and return an electronic copy of this letter or confirm your agreement by email" if it "agree[d] to the retention of CRA on these terms."  [ECF No. 1-1 at 14].  Both Skadden and DRG signed on the second page, with Skadden signing under the words "Accepted by" and DRG signing under the words "Name and Address of Individual Designated to Receive and Approve Invoices."  [Id. at 15].

Between October 2024 and April 2025, CRA allegedly provided all the requested consulting work "for the benefit of" DRG to Skadden, [Compl. ¶ 8], and submitted invoices for this work to DRG on November 26, 2024; December 20, 2024; January 23, 2025; March 26, 2025; and May 12, 2025, [id. ¶¶ 9, 11, 13, 15, 17]; see also [ECF No. 1-1 at 26–46].  DRG paid part of the November invoice but did not pay any of the other invoices.  [Compl. ¶¶ 10, 12, 14, 16, 18–19].  According to the Complaint, DRG owes CRA a total balance of $925,851.82 "plus interest at the contract rate of 1.5 percent per month, legal fees, and expenses."  [Id. ¶ 19].  In

3

addition, CRA claims it is owed "reasonable attorneys' fees and costs" that it is incurring in bringing this litigation.  [Id. ¶ 23].

### B.  Procedural History

CRA initiated this action in Suffolk County Superior Court on August 18, 2025, [Compl. at 7, 12], asserting a breach-of-contract claim (Count I) and a claim under Mass. Gen. Laws ch. 93A, §§ 2, 11 (Count II) against DRG, [id. ¶¶ 24–35].  On October 30, 2025, DRG removed the action to federal court based on diversity jurisdiction.  [ECF No. 1 ¶¶ 3, 5].

On November 26, 2025, DRG filed the instant motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), arguing that (1) it is not subject to personal jurisdiction in Massachusetts, and (2) Count II of the Complaint fails to state a claim upon which relief can be granted.  [ECF No. 9].  CRA opposed the motion on January 9, 2026.  [ECF No. 13].

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  Legal Standard

A court must have personal jurisdiction, that is "power over the parties before it[,] . . . before it can resolve a case."  Fuld v. Palestine Liberation Org., 606 U.S. 1, 11 (2025) (quoting Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82, 95 (2017)); see also Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 143 (1st Cir. 1995) ("Personal jurisdiction implicates the power of a court over a defendant.").  Personal jurisdiction, however, is a "waivable right," and "parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction" through contractual forum-selection clauses.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311 (1964)).  Such forum-selection clauses are generally enforceable unless they are "unreasonable and unjust" or "invalid for such reasons as fraud or overreaching."  M/S Bremen

v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); see also Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc., 997 F.3d 367, 375 (1st Cir. 2021) (noting that courts "presume that . . . forum selection clause[s] [are] 'prima facie valid' and should not be set aside absent a 'strong showing' of 'some reason the presumption of enforceability should not apply'" (quoting Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 48 (1st Cir. 2014))).[1]

"Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009). Permissive forum-selection clauses merely allow for jurisdiction in the specified venue without foreclosing the possibility of other venues, while mandatory forum-selection clauses contain "clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Id. (quoting 14D Wright & Miller's Federal Practice & Procedure § 3803.1 (3d. ed. 1998)). The next step in "evaluating the applicability of a forum selection clause is ascertaining its scope." Claudio-De León, 775 F.3d at 47 (citing Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc., 619 F.3d 90, 92–93 (1st Cir. 2010)). If the claims at issue fall within the scope of the forum-selection clause, courts ask "whether there is some reason the presumption of enforceability should not apply." Id. at 48 (quoting Rafael Rodríguez Barril, Inc., 619 F.3d at 93).

**B. Discussion**

DRG argues that the Court lacks personal jurisdiction over it because the forum-selection

---

[1] There is no conflict between federal law and Massachusetts law on the enforceability of forum-selection clauses, so the Court need not determine the "unsettled issue of whether 'forum selection clauses are to be treated as substantive or procedural for Erie purposes.'" Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 16 (1st Cir. 2009) (quoting Lambert v. Kysar, 983 F.2d 1110, 1116 & n.10 (1st Cir. 1993)); see Atlas Glass & Mirror, Inc., 997 F.3d at 374 (noting that, "in determining enforceability, . . . Massachusetts follow[s] the federal common-law standard" (citing Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir. 2011))).

clause in the Agreement binds only CRA and Skadden, not DRG, asserting that DRG agreed only to "review and approve invoices," not to be bound by the Agreement as a whole. [ECF No. 9 at 4–5]. CRA counters that DRG is bound by the Agreement's forum-selection clause because Skadden acted as DRG's authorized agent in signing the Agreement, thereby binding DRG to it, [ECF No. 13 at 10–18], and asserts that forum-selection clauses are presumed valid in the absence of fraud or unfair circumstances, [id. at 10].[2]

As an initial matter, the parties do not dispute that the Agreement's forum-selection clause, which provides that any dispute arising in connection with the Agreement "shall be resolved" by Massachusetts courts, [ECF No. 1-1 at 21 (emphasis added)], is mandatory. [ECF No. 9]; [ECF No. 13 at 5]; see also Claudio-De León, 775 F.3d at 46–47 (holding that forum-selection clause containing the word "shall" left "no doubt" that it was mandatory and noting that it is "axiomatic that the word 'shall' has a mandatory connotation" (citing Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 346 (2005))). The crux of the parties' dispute therefore centers around the "scope" of the forum-selection clause. Claudio-De León, 775 F.3d at 47. The forum-selection clause here applies to the "parties to this [A]greement," [ECF No. 1-1 at 21], but the

---

[2] DRG also argues that it is not subject to personal jurisdiction in Massachusetts under the Massachusetts long-arm statute and the Fourteenth Amendment's Due Process Clause. [ECF No. 9 at 7–11]. In its opposition, CRA does not claim that DRG is subject to personal jurisdiction in Massachusetts if the Agreement's forum-selection clause is not enforceable against DRG. See [ECF No. 13 at 8–9]. Because the Court concludes that the Agreement's forum-selection clause is enforceable against DRG, it need not determine whether DRG would otherwise be subject to personal jurisdiction in Massachusetts. See, e.g., Provanzano v. Parker View Farm, Inc., 827 F. Supp. 2d 53, 58 (D. Mass. 2011) (noting that, although the plaintiff typically "bears the burden of demonstrating that personal jurisdiction is authorized by the Massachusetts long-arm statute . . . and is consistent with the Due Process Clause of the United States Constitution[,]" "[b]y signing a forum selection clause . . . a party to a contract waives its right to challenge personal jurisdiction" (first citing Mass. Gen. Laws ch. 223A, § 3; then citing Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009); and then citing Inso Corp. v. Dekotec Handelsges mbH, 999 F. Supp. 165, 166 (D. Mass. 1998))).

parties to this litigation disagree as to whether DRG is a party to the Agreement and therefore whether the scope of the clause encompasses CRA's claims against DRG.[3]  The Court concludes that Skadden executed the Agreement as DRG's agent and that DRG is therefore bound by the forum-selection clause.

Under Massachusetts law, an "agency relationship" is formed through "express or implied mutual consent that an agent will 'act on behalf and for the benefit of the principal, and subject to the principal's control.'"  Fergus v. Ross, 79 N.E.3d 421, 424 (Mass. 2017) (quoting Theos & Sons, Inc. v. Mack Trucks, Inc., 729 N.E.2d 1113, 1119 (Mass. 2000)).  An agent can "impose legal obligations or otherwise bind the principal" if the agent has actual or apparent authority to do so.  Id. at 425 (citing Theos & Sons, Inc., 729 N.E.2d at 1119); see also Medeiros v. Middlesex Ins. Co., 716 N.E.2d 1076, 1080 (Mass App. Ct. 1999) ("[T]he contractual act of the agent has the same legal effect as if done by the principal and makes the principal the actual party to and obligor of the undertaking." (citing Fore River Shipbuilding Corp. v. Commonwealth, 142 N.E. 812, 813 (Mass. 1924))).  Actual authority can be express—when "the principal explicitly manifests consent, either through words or conduct, that the agent should act on behalf of the principal"—or implied "from the conduct of the parties."  von Schönau-Riedweg

---

[3] The parties do not address whether state law or federal law governs the question of the scope of the forum-selection clause.  See [ECF No. 9]; [ECF No. 13].  While courts generally apply federal law to questions regarding the enforceability of forum-selection clauses, courts are split on whether a federal court sitting in diversity should apply federal or state law in interpreting the scope of such clauses.  See State ex rel. Balderas v. Real Est. L. Ctr., P.C., 430 F. Supp. 3d 900, 929–31 (D.N.M. 2019) (discussing circuit split); Firexo, Inc. v. Firexo Grp. Ltd., 99 F.4th 304, 322–25 (6th Cir. 2024) (similar).  The First Circuit has not decided whether the scope and interpretation of forum-selection clauses are questions of state or federal law.  See Lambert, 983 F.2d at 1116–17.  Although the Court assumes that state law applies, see Lincare, Inc. v. Deso, No. 4:22-cv-40126, 2023 WL 5515824, at *4 n.3 (D. Mass. Aug. 25, 2023), it need not resolve the question here because there appears to be no material difference between state and federal law on the issues in this case.

v. Rothschild Bank AG, 128 N.E.3d 96, 109 (Mass. App. Ct. 2019) (quoting Theos & Sons, Inc., 729 N.E.2d at 1120 n.13).  Additionally, an agent who lacks actual authority can bind a principal if the "principal acquiesces in the agent's action, or fails promptly to disavow the unauthorized conduct after disclosure of material facts."  Licata v. GGNSC Malden Dexter LLC, 2 N.E.3d 840, 847 (Mass. 2014) (quoting Linkage Corp. v. Trs. of Bos. Univ., 679 N.E.2d 191, 204 (Mass. 1997)); see also Hyewoong Yoon v. Seyeon Lee, 433 F. Supp. 3d 18, 27 (D. Mass. 2019) ("Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal . . . if the principal later ratifies the agent's conduct." (quoting Daynard v. Ness, Motely, Loadholt, Richardson & Pool, P.A., 290 F.3d 42, 55 (1st Cir. 2002))).

Here, Skadden, which served as DRG's legal counsel, acted as DRG's agent in executing the Agreement.  "[I]n a broad sense counsel may be an agent and his client a principal" and, thus, the "acts of the attorney in the conduct of litigation are binding upon the client."  Burt v. Gahan, 220 N.E.2d 817, 818–19 (Mass. 1966) (quoting Judd & Detweiler v. Gittings, 43 App. D.C. 304, 310 (D.C. Cir. 1915)); see also United States v. Prado, 701 F. Supp. 3d 76, 81 (D. Mass. 2023) ("In an attorney-client relationship, the attorney functions as the client's agent." (citing Link v. Wabash R. Co., 370 U.S. 626, 634 (1962))), aff'd sub nom., United States v. De Souza Prado, 142 F.4th 99 (1st Cir. 2025).  More specifically, the Agreement here states that Skadden is "acting on behalf of [its] client, [DRG]," [ECF No. 1-1 at 14 (emphasis added)], and both CRA and DRG refer to Skadden as DRG's "duly authorized litigation legal counsel," [Compl. ¶ 4]; [ECF No. 9 at 2].  Thus, DRG clearly consented to Skadden acting on its behalf, for its benefit, and subject to its control, giving rise to an agency relationship.  Fergus, 79 N.E.3d at 424.

8

As DRG's agent, Skadden bound DRG to the Agreement based on its actual authority to do so. DRG signed the Agreement stating that Skadden was retaining CRA "on behalf of . . . [DRG]," [ECF No. 1-1 at 14], thereby "explicitly manifest[ing] consent" for Skadden to act on its behalf. von Schönau-Riedweg, 128 N.E.3d at 109 (quoting Theos & Sons, Inc., 729 N.E.2d at 1120 n.13); see also Theos & Sons, Inc., 729 N.E.2d at 1120 (finding insufficient evidence of actual authority where plaintiff "profer[red] no evidence that [defendant] knew of, or consented to" purported agent's work on defendant's behalf). DRG thus became "the actual party to and obligor of the undertaking," Medeiros, 716 N.E.2d at 1080, even though it was Skadden, and not DRG, that furnished the primary signature on the Agreement.

Moreover, even if Skadden did not have actual authority to act on DRG's behalf, DRG is bound by the Agreement because it ratified Skadden's actions, either when it added its signature to the Agreement or by making partial payment of invoices stemming from the Agreement. [ECF No. 1-1 at 15]; [ECF No. 13 at 6–7]. Because DRG acquiesced in Skadden's actions on its behalf, it is bound by the Agreement's terms. See Licata, 2 N.E.3d at 847–48.[4]

---

[4] CRA also argues, in the alternative, that DRG is bound by the Agreement as a closely related non-party. [ECF No. 13 at 13 n.1 (first quoting Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc., 677 F. Supp. 2d 373, 379 (D. Mass. 2009); and then quoting CRA Int'l, Inc. v. Rowdec, LLC, No. 14-cv-12529, 2015 U.S. Dist. LEXIS 190650, at *12 (D. Mass. Apr. 3, 2015))]. It is true that some courts have held that "a non-party may be bound by a forum selection clause" if that party is "closely related to the dispute such that it becomes foreseeable that it will be bound." Barletta Heavy Div., Inc., 677 F. Supp. 2d at 379 (citing Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)). The Court notes, however, that other courts have raised concerns about this "closely related" doctrine, describing it as in tension with principles of state law and Supreme Court precedent. See Firexo, Inc., 99 F.4th at 312–21 (discussing the history of the "closely related" doctrine and noting that it is "not entirely apparent . . . that its benefits outweigh its concerns" given its divergence with aspects of state contract law and the Supreme Court's "minimum contacts" personal jurisdiction jurisprudence); SCPS, LLC v. Kind L., 770 F. Supp. 3d 11, 39 (D.D.C. 2025) (noting that courts that have deployed the "closely related" doctrine have "done so cautiously" given its tensions with Supreme Court precedent (citing M3 USA Corp. v. Qamoum, No. 20-cv-02903, 2021 WL 2324753, at *11 (D.D.C. June 7,

DRG's argument that the Agreement is between Skadden and CRA, not between CRA and DRG, misses the point.  [ECF No. 9 at 5].  As an initial matter, because Skadden executed the Agreement on DRG's behalf as its agent, DRG is, in fact, a party to the Agreement.  Medeiros, 716 N.E.2d at 1080.  The fact that Skadden may also be bound by the Agreement does not mean that DRG cannot be bound through Skadden.  In general, however, "[u]nless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract."  Porshin v. Snider, 212 N.E.2d 216, 217 (Mass. 1965) (quoting Restatement (Second) of Agency § 320 (A.L.I. 1958)).  Here, the plain language of the Agreement disclosed that Skadden was making the contract for DRG, the "ultimate client." [ECF No. 1-1 at 14–15].  Thus, although whether Skadden, a non-party to this litigation, is bound by the Agreement is not relevant to DRG's motion, DRG appears to be mistaken that Skadden is a party to the Agreement with CRA.

Given that DRG is bound by the forum-selection clause, the Court must enforce that clause unless "there is some reason the presumption of enforceability should not apply." Claudio-De León, 775 F.3d at 48 (quoting Rafael Rodríguez Barril, Inc, 619 F.3d at 93).  Forum-selection clauses are "unreasonable, and thus unenforceable" if (1) they are "the product of 'fraud or overreaching'"; (2) "enforcement would be unreasonable and unjust"; (3) moving forward "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or (4) "enforcement would contravene a strong public policy of the forum in which the suit is brought." Id. at 48–49 (quoting Rafael Rodríguez Barril, Inc., 619 F.3d at 93).

---

2021))).  In light of the Court's conclusion that Skadden bound DRG to the Agreement as DRG's agent, it need not address whether DRG is separately bound via the closely related doctrine.

Here, DRG appears to argue only that it would be unreasonable and unjust to enforce the forum-selection clause, asserting that the clause was "buried" in the "boilerplate terms" attached to the "CRA-Skadden engagement letter," that no DRG employee negotiated the terms of CRA's engagement, and that DRG "never expected" to "be forced to defend a lawsuit in Massachusetts." [ECF No. 9 at 4–6]; [ECF No. 10 ¶¶ 11, 15].[5]

These arguments each fall short of the "truly exceptional circumstances" that are required "to deny enforcement of a forum selection clause under the generic pronouncement that it would be 'unreasonable and unjust.'"  Barletta Heavy Div., Inc. v. Erie Interstate Contractors, Inc., 677 F. Supp. 2d 373, 378 (D. Mass. 2009) (quoting Bremen, 407 U.S. at 15); see also Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23–24 (1st Cir. 2011) (referring to the "unreasonable and unjust" condition as "more demanding" than a mere inquiry into "contacts" or "convenience" (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991))).  Specifically, the placement of the forum-selection clause on page five, even assuming it to be a boilerplate provision, does not make its enforcement unreasonable.  See Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 389 (1st Cir. 2001) ("[T]hat the forum-selection clause is a 'boilerplate' provision does not ipso facto render it invalid. . . . Similarly, the placement of [a forum-selection clause] on the reverse

---

[5] DRG also argues that it should not be expected to have understood it was waiving its rights because under the law of Florida, DRG's home state, "a forum selection clause is not a sufficient basis for a conferral of personal jurisdiction."  [ECF No. 9 at 6 (quoting Slaihem v. Sea Tow Bah. Ltd., 148 F. Supp. 2d 1343, 1347 (S.D. Fla. 2001))].  That DRG's home state has a different approach to forum-selection clauses is not relevant here, because DRG entered into a binding agreement that clearly provides that Massachusetts law applies to any disputes that may arise in connection with it, [ECF No. 1-1 at 21]; see Lambert, 983 F.2d at 1118–19 (noting that Massachusetts courts would apply Washington law in evaluating the terms and conditions of a contract containing a forum-selection clause when the contract provided that the terms and conditions must be governed by Washington law); Stagecoach Transp., Inc. v Shuttle, Inc., 741 N.E.2d 862, 866–67 (Mass. App. Ct. 2001) (finding that choice-of-law provisions are enforced in Massachusetts courts if enforcement is fair and reasonable).

side of the contract is of little consequence where . . . it is printed clearly in plain language and in a contract of reasonable length." (citing Lambert v. Kysar, 983 F.2d 1110, 1120 (1st Cir. 1993))). Nor does any lack of negotiation mean the clause cannot be enforced. See Rivera, 575 F.3d at 21 ("[T]he presumption in favor of enforcing a forum selection clause applies even if the clause was not the product of negotiation." (quoting 2215 Fifth St. Assocs. v. U–Haul Int'l, Inc., 148 F. Supp. 2d 50, 56 (D.D.C. 2001))).

Additionally, it does not matter whether DRG actually knew it was waiving a personal-jurisdiction defense or expected to have to potentially defend a lawsuit in Massachusetts when it signed the Agreement. See Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 296 (D. Mass. 2016) ("[T]ypically, one who signs a written agreement is bound by its terms whether he reads and understands them or not." (quoting Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 44 (1st Cir. 2012))), aff'd, 918 F.3d 181 (1st Cir. 2019). The mere fact that DRG signed the Agreement under the heading "Name and Address of Individual Designated to Receive and Approve Invoices," [ECF No. 1-1 at 15], does not make it unreasonable to hold DRG to the entirety of the Agreement. As noted supra, Skadden bound DRG to the entire Agreement, regardless of whether a representative of DRG personally signed it. Because DRG has not shown that enforcing the forum-selection clause would be unreasonable or unjust or otherwise overcome the presumption of enforceability, see Claudio-De León, 775 F.3d at 48, DRG must defend this

12

lawsuit in Massachusetts.  Accordingly, DRG's motion to dismiss for lack of personal jurisdiction is **<u>DENIED</u>**.

### III.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," <u>id.</u> at 555, and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st Cir. 2008) (citation modified) (quoting <u>Centro Medico del Turabo, Inc. v. Feliciano de Melecio</u>, 406 F.3d 1, 6 (1st Cir. 2005)).  Simply including "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is not enough.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).  "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." <u>Grajales v. P.R. Ports Auth</u>., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing <u>Iqbal</u>, 556 U.S. at 678). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  <u>Id.</u> at 44 (quoting <u>Iqbal</u>, 556 U.S. at 679).

#### B.  Discussion

DRG argues that Count II of the Complaint fails to state a claim under Chapter 93A because CRA has alleged only simple breach of contract.  [ECF No. 9 at 12].  CRA counters that DRG's willful and knowing failure to pay for CRA's services was unfair and deceptive within the meaning of the statute.  [ECF No. 13 at 19].

13

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  Mass. Gen. Laws ch. 93A, § 2(a).  "Although Chapter 93A claims are often linked with and derivative of other statutory and common law claims for relief, it is settled law that Chapter 93A supplies an independent cause of action."  Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334–35 (D. Mass. 2012) (citing In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 184 (1st Cir. 2009)), aff'd, 527 F. App'x 20 (1st Cir. 2013).  A claim premised merely on allegations of a breach of contract, however, "falls well short of the Chapter 93A liability threshold."  Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 590 (1st Cir. 2007) (citing Com. Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000)); see also Framingham Auto Sales, Inc. v. Workers' Credit Union, 671 N.E.2d 963, 965 (Mass. App. Ct. 1996) ("[A] mere breach of a legal obligation under commercial law, without more, does not amount to an unfair and deceptive act under [Chapter 93A]." (citing Whitinsville Plaza, Inc. v. Kotseas, 390 N.E.2d 243 (Mass. 1979))).

For a breach of contract to qualify as a violation of Chapter 93A, the defendant must "knowingly violat[e] its contractual agreements in order to secure an unwarranted benefit for themself."  edv & cad group v. Scopic Software LLC, 771 F. Supp. 3d 33, 54 (D. Mass. 2025) (citing Formulatrix, Inc. v. Rigaku Automation, Inc., 344 F. Supp. 3d 410, 430 (D. Mass. 2018)); see also Secure Our City, Inc. v. ECI Sys., LLC, 594 F. Supp. 3d 96, 105 (D. Mass. 2022) ("[T]he party alleging a Chapter 93A violation must demonstrate 'the use of a breach of contract as a lever to obtain advantage for the party committing the breach in relation to the other party.'" (quoting Ahern v. Scholz, 85 F.3d 774, 799 (1st Cir. 1996))); Wagner v. Fed. Home Loan Mortg. Corp., 494 F. Supp. 3d 80, 87 (D. Mass. 2020) ("In order to transform a breach of

contract into a Chapter 93A claim, 'the breach must be both knowing and intended to secure "unbargained-for benefits" to the detriment of the other party.'" (quoting Crosby Legacy Co., LLC v. TechnipFMC PLC, No. 18-cv-10814, 2019 WL 5588993, at *13 (D. Mass. Sept. 13, 2019))); Mass. Emps. Ins. Exch. v. Propac-Mass, Inc., 648 N.E.2d 435, 437 (Mass. 1995) ("[C]onduct undertaken as leverage to destroy the rights of another party to the agreement while the agreement is still in effect . . . has a coercive quality that, with the other facts, [may] warrant[] a finding of unfair acts or practices.").

Here, CRA's Count II falls far short of stating a claim under Chapter 93A. CRA alleges in conclusory fashion that "[t]he failure and refusal [by DRG] to pay all monies owed to CRA" under the Agreement was "intentional and willful" and therefore "an unfair and deceptive act and practice" under Chapter 93A, [Compl. ¶¶ 33–34], but it does not provide any factual allegations to support these conclusions, nor does it allege that DRG's breach has the necessary "coercive quality" to rise to the level of a violation of Chapter 93A, Propac-Mass, Inc., 648 N.E.2d at 437; see also Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013) (affirming dismissal of Chapter 93A claim where complaint "offer[ed] no more" than "a general allegation regarding the purported illegality" of defendant's conduct and noting that a Chapter 93A claim generally requires facts illustrating "something beyond a mere good faith dispute, failure to pay, or simple breach of contract" (citing Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55–56 (1st Cir. 1998))); McCabe v. Ford Motor Co., No. 23-cv-10829, 2026 WL 249805, at *4 (D. Mass. Jan. 30, 2026) (dismissing Chapter 93A claim where the complaint failed to "allege unique facts in support of that claim"). Because Count II is no more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," it cannot survive a motion to dismiss under Rule 12(b)(6). Iqbal, 556 U.S. at 678.

15

CRA's counterarguments are unavailing.  First, it argues that its Chapter 93A claim is "sufficient unless [DRG] shows beyond doubt that no provable set of facts would entitle the [CRA] to relief."  [ECF No. 13 at 18–19 (quoting Fleet Nat'l Bank v. Certain Underwriters at Lloyd's, Lond., No. 02-cv-02673, 2003 Mass. Super. LEXIS 137, at *2 (Mass. Sup. Ct. May 14, 2003))].  This language, however, has its origins in Conley v. Gibson, 355 U.S. 41 (1957), which has long been superseded by Twombly's plausibility standard.  See Iqbal, 556 U.S. at 670 (noting that "Twombly retired the Conley no-set-of-facts test").

Second, in its motion, CRA refers to "the Defendant's repeated promises to pay Plaintiff," which it calls a "ruse."  [ECF No. 13 at 19].  As an initial matter, the Court notes that this assertion is part of a sentence containing material that appears unrelated to the present case, including references to "BRA" (instead of CRA), a mention of securing "a tenant for One Milk Street," and a statement that the Defendant "got the benefit of years of Plaintiff's marketing efforts."  [ECF No. 13 at 19].  More importantly, these allegations are found nowhere in the Complaint and thus do not provide a basis for allowing CRA's Chapter 93A claim to proceed.  See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) ("Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint."); Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55–56 (1st Cir. 2012) (noting that in evaluating a Rule 12(b)(6) motion, courts "can consider (a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss'" (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005))).  Accordingly, DRG's motion to dismiss Count II for failure to state a claim is **GRANTED**.

16

IV.      **CONCLUSION**

DRG's motion to dismiss for lack of personal jurisdiction and failure to state a claim,

[ECF No. 9], is **GRANTED IN PART** and **DENIED IN PART**.  The Court has personal

jurisdiction over DRG based on the Agreement's forum-selection clause.  Count II of the

Complaint is dismissed without prejudice.  The case will proceed on Count I, the breach-of-

contract claim.

**SO ORDERED.**

April 6, 2026                                        */s/ Allison D. Burroughs*
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE

17